**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**DEMETRIUS HILL,**

      Plaintiff,

**v.**                                **CIVIL ACTION NO. 3:06-CV-136
(JUDGE GROH)**

**AL HAYNES, et al.,**

      Defendants.

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION

On this day, the above-styled matter came before the Court for consideration of the

Report and Recommendation ("R&R") of United States Magistrate Judge John S. Kaull.

Previously, the United States Court of Appeals for the Fourth Circuit remanded this case

"for a determination whether the grievance procedure was 'available' to Hill within the

meaning of [42 U.S.C.] § 1997e(a) so he could administratively exhaust his claim." Hill v.

Haynes, 380 F. App'x 268, 274 (4th Cir. 2010). As such, the Court referred this matter to

Magistrate Judge Kaull for submission of an R&R. In the R&R, he recommends granting

the Defendants' Motion to Dismiss or for Summary Judgment [Doc. 38] because the

grievance procedure was available to Hill and Hill did not exhaust his claims.

### I. Background

On December 15, 2006, Hill filed a Bivens civil rights complaint concerning his

incarceration at USP Hazelton.[1] On April 2, 2007, the Defendants filed a Motion to Dismiss,

or, in the Alternative, for Summary Judgment, arguing that Hill failed to exhaust his

---

[1] See Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).

administrative remedies as required by the Prisoner Litigation Reform Act ("PLRA"). On November 29, 2007, Magistrate Judge Kaull filed an R&R recommending that the Court deny this motion.

On March 5, 2008, this Court declined to adopt the R&R and dismissed the complaint without prejudice. Hill appealed this decision to the Fourth Circuit. The Fourth Circuit found Hill had shown genuine issues of material fact as to whether the Defendants prevented him from exhausting administrative remedies. Consequently, the Fourth Circuit remanded this case "for a determination whether the grievance procedure was 'available' to Hill within the meaning of § 1997e(a) so he could administratively exhaust his claim." Id.

The Court then re-referred this matter to Magistrate Judge Kaull. After several continuances, Magistrate Judge Kaull conducted an evidentiary hearing over three days. On September 5, 2012, he entered his R&R recommending that the Court grant the motion to dismiss or for summary judgment.

On November 9, 2012, the Court adopted the R&R and dismissed the complaint because Hill had not filed objections. On December 7, 2012, Hill filed a motion for reconsideration, averring that he prepared a motion for extension of time but delays in the prison mail system caused it to reach the Court late. The Court granted this motion on December 17, 2012. The Court thereafter continued the objections deadline several times at Hill's request, ultimately setting an objections deadline of October 15, 2013. Hill timely filed his objections. The Defendants then moved to extend the response deadline. The

Court granted this motion.[2]  Hill then filed a reply and a surreply [Doc. 226].[3]

## II.  Standards of Review

### 1.      R&R

This Court must make a *de novo* review of those portions of the magistrate judge's findings to which objection is made.  28 U.S.C. § 636(b)(1).  The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  Thomas v. Arn, 474 U.S. 140, 150 (1985).  Failure to file timely objections constitutes a waiver of *de novo* review and the right to appeal this Court's Order.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Thus, the Court reviews *de novo* those portions of the R&R to which Hill objects and the remainder of the R&R for clear error.

### 2.      Motion to Dismiss

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "'detailed factual allegations,'" it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).  Thus, "[a] pleading that offers 'labels and conclusions'

---

[2] After the Court did so, Hill filed a letter seeking more time to respond to the Defendants' motion [Doc. 224].  The Court denies Hill's motion as moot because the Court already granted the Defendants' motion and anything that Hill could have said in response would not have changed this Court's decision.

[3] Because Hill did not seek leave of court to file a surreply as required by Local Rule of Civil Procedure 7.02(b)(3), the Court disregards it and will order it stricken.

or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancements.'" Id. (quoting Twombly, 550 U.S. at 555, 557). Twombly's plausibility standard applies to *pro se* complaints, Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008), but a court must construe such a complaint liberally. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

Additionally, when reviewing a Rule 12(b)(6) motion, a court must assume that the complaint's well-pleaded allegations are true, resolve all doubts and inferences in favor of the plaintiff, and view the allegations in a light most favorable to the plaintiff. Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999). Only factual allegations receive the presumption of truth. Iqbal, 556 U.S. at 678-79. A court may also consider facts derived from sources beyond the complaint, including documents attached to the complaint, documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic," and facts subject to judicial notice under Federal Rule of Evidence 201. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

### 3.     Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, a court determines "whether there is the need for a trial- whether, in other words,

there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show an absence of material fact, the non-moving party must come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted). A court should deny summary judgment "if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions." Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.3d 245 (4th Cir. 1967); see also id. at 253 (noting "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). Additionally, in this case, "[b]ecause the prison employees bear the burden of exhaustion . . . , they must show that the evidence is so one-sided that no reasonable factfinder could find that Hill was prevented from exhausting his administrative remedies." Hill, 380 F. App'x at 270 (citations omitted).

### III. Discussion

Magistrate Judge Kaull recommends dismissing the complaint because the grievance procedure was available to Hill and Hill did not administratively exhaust his claims. Hill objects to this recommendation on three grounds.

## 1. Objection that Magistrate Judge Kaull Made Factual Determinations that Are a Jury Function and the Fourth Circuit Decision Requires a Trial

Hill first objects that Magistrate Judge Kaull made factual determinations that are a jury function. In that same vein, he also argues that he is entitled to a trial because the Fourth Circuit found genuine issues of material fact concerning the availability of administrative remedies.

The circuit courts of appeals have uniformly found that a judge can resolve factual disputes concerning exhaustion of administrative remedies under the PLRA. Albino v. Baca, 747 F.3d 1162, 1170 (9th Cir. 2014) (explaining judges should decide factual disputes concerning exhaustion); Messa v. Goord, 652 F.3d 305, 310 (2d Cir. 2011) (finding no right to a jury trial concerning PLRA exhaustion); Drippe v. Tobelinski, 604 F.3d 778, 785 (3d Cir. 2010) (stating that resolving whether a prisoner administratively exhausted his claims required judgment of the court); Dillon v. Rogers, 596 F.3d 260, 272 (5th Cir. 2010) (holding "judges may resolve factual disputes concerning exhaustion" as "it is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time"); Bryant v. Rich, 530 F.3d 1368, 1375-77 & n.15 (11th Cir. 2008) (holding court may decide factual disputes concerning PLRA exhaustion and finding no right to a jury trial on the issue); Pavey v. Conley, 544 F.3d 739, 742 (7th Cir. 2008) (setting forth a framework for cases where parties contest PLRA exhaustion that requires the court to hold a hearing and decide the issue). Consistent with this principle, the Fourth Circuit remanded this case for the Court to determine whether the grievance procedure was available to Hill. The Fourth Circuit did not hold that he was entitled to a jury trial on this issue. Indeed, allowing a jury to decide factual disputes over

6

exhaustion would undermine the purpose of the requirement as Congress enacted it to 'reduce the quantity and improve the quality of prisoner suits.'" Bryant, 530 F.3d at 1376-77 (quoting Porter v. Nussle, 534 U.S. 516, 524 (2002)). Accordingly, the Court **OVERRULES** this objection because this Court must decide this issue.

### 2.    Objection to Burden of Proof

Hill next argues that Magistrate Judge Kaull erroneously placed the burden of proof on him. The R&R sets out the burden of proof as follows:

> A defendant may use a plaintiff's failure to exhaust administrative remedies as an affirmative defense; however, exhaustion is not a jurisdictional requirement, and inmates need not plead exhaustion or bear the burden of proving exhaustion. Jones v. Bock, 549 U.S. 199 (2007); see also Anderson v. XYZ Correctional Health Servs., Inc., 407 F.3d 674, 681 (4th Cir. 2005). If failure to exhaust is raised as an affirmative defense, the plaintiff may "directly disput[e] the defendant's allegations, [ . . . ] demonstrate the [administrative remedy process] described by the defendants does not actually exist at the prison[,] or provide an excuse for the unexhausted claim.["] See Gary Proctor, Ngo Excuses: Proving, Rebutting, and Excusing Failure to Exhaust Administrative Remedies in Prisoner Suits After Woodford v. Ngo and Jones v. Bock, 31 Hamline L. Rev. 471, 487-89 (2008). In the event that the plaintiff rebuts the defendant's evidence, the evidence must be weighed equally, and the inmate's testimony may not be discredited as "self-serving." See Kaba v. Stepp, 458 F.3d 678, 681 (7th Cir. 2006).

This portion of the R&R accurately states the law and does not place the burden of proof on Hill. Rather, it only explains how Hill can defeat the failure to exhaust defense. Accordingly, the Court **OVERRULES** this objection.

### 3 .    Objection that the Grievance Procedure Was Unavailable

Hill objects to the conclusion that remedies were available to him on three grounds. First, he argues that officials waived the exhaustion process by failing to answer BP-8 and BP-9 forms. Hill also disputes Magistrate Judge Kaull's finding that he fabricated evidence

to create the illusion that he filed grievances that went unanswered.  Second, Hill argues that retaliation waived the exhaustion requirement.  Third, although not explicitly raised in his objections, Hill has argued throughout this case that remedies were unavailable because Counselor Marrero did not provide him with grievance forms.

In response, the Defendants contend that, even if officials did not answer a grievance, Hill still needed to proceed through the remedy process.  They also request that the Court dismiss this case based on Hill's use of fabricated evidence to support this argument.  Finally, the Defendants aver that Hill's remaining objections fail because the evidence establishes that none of the alleged retaliatory acts deterred Hill from filing grievances and that Hill could access grievance forms.

A prisoner bringing an action concerning prison conditions under 42 U.S.C. § 1983 or any other federal law must have exhausted all available administrative remedies.  42 U.S.C. § 1997e(a).  Exhaustion is mandatory and applies in Bivens actions.  Porter, 534 U.S. at 524.  Because exhaustion is a prerequisite to suit, a prisoner must have done so before filing his complaint.  Id.  Exhaustion is required even if the relief that the prisoner seeks is not available in grievance proceedings.  Id.

The Bureau of Prisons has a four-step Administrative Remedy Program.  28 C.F.R. § 542.10 et seq.  An inmate must "first present an issue of concern informally to staff."  Id. § 542.13.  If he is not satisfied with the result of this step, he must submit "a formal written Administrative Remedy Request" on a BP-9 form.  Id. § 542.14(a).  The deadline for the informal complaint and BP-9 is twenty days from "the date on which the basis for the Request occurred."  Id.  The warden must answer the BP-9 within twenty days.  Id.

§ 542.18. If the inmate is not satisfied with the warden's response, he must submit an appeal on a BP-10 form to the regional director within twenty days of the BP-9 response. Id. § 542.15(a). The regional director must respond within thirty days. Id. § 542.18. If the inmate is not satisfied with the response to the BP-10, he must appeal to the general counsel by filing a BP-11 form within thirty days of the BP-10 response. Id. § 542.15(a). The general counsel must respond within forty days. Id. § 542.18. An inmate exhausts his administrative remedies if he completes these steps. Further, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." Id.

A prisoner, however, need not exhaust administrative remedies if they are unavailable. Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). An administrative remedy was not "available if a prisoner, through no fault of his own, was prevented from availing himself of it." Id. "Thus, 'when prison officials prevent inmates from using the administrative process . . . , the process that exists on paper becomes unavailable in reality." Zander v. Lappin, 415 F. App'x 491, 492 (4th Cir. 2011) (quoting Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006)). As such, retaliation by officials can render remedies unavailable. See Kaba, 458 F.3d at 686.

However, "a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are." Moore, 517 F.3d at 725. Indeed, the PLRA requires proper exhaustion. Woodford v. Ngo, 548 U.S. 81, 93 (2006). A prisoner therefore "must have utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given

an opportunity to address the claims administratively." <u>Moore</u>, 517 F.3d at 725 (quoting <u>Woodford</u>, 548 U.S. at 88).

### a. Failure of Officials to Answer Grievances

Hill's argument that administrative remedies were unavailable because officials allegedly did not answer his grievances lacks merit. The regulations provide that an inmate "may consider the absence of a response to be a denial" when the time for a response to a grievance expires. 28 C.F.R. § 542.18. Thus, if a BP-8 or BP-9 went unanswered, Hill was required to consider the non-response a denial and proceed to the next level if he was dissatisfied with the denial. <u>See</u> <u>Thomas v. Deboo</u>, Civil Action No. 5:12CV32, 2012 WL 5249250, at *4 (N.D.W. Va. Oct. 2, 2012) (finding that, even if warden did not answer plaintiff's BP-9, plaintiff needed to file a BP-10 and BP-11 as a non-response amounts to a denial per § 542.18); <u>see also</u> <u>Eldridge v. Berkebile</u>, __ F. App'x __, 2014 WL 3906846, at *2 (10th Cir. 2014) (finding untimely response to BP-9 did not relieve prisoner of obligation to continue remedy process given that § 542.18 states a non-response is construed as a denial); <u>Terrell v. Benfer</u>, 429 F. App'x 74, 77 (3d Cir. 2011) (finding, based on § 542.18, that prisoner needed to proceed to formal grievance process even if he reasonably believed lack of answer to BP-8 amounted to a denial). Indeed, in <u>Moore</u>, the Fourth Circuit recognized that a prisoner must continue the grievance process even if officials do not answer a BP-8 or BP-9:

> [T]o be entitled to bring suit in federal court, a prisoner must have utilized all available remedies in accordance with the applicable procedural rules, so that prison officials have been given an opportunity to address the claims administratively. Having done that, a prisoner has exhausted his available remedies, *even if prison employees do not respond*.

517 F.3d at 725 (citations and quotation marks omitted) (emphasis added). Hill does not cite any contrary Fourth Circuit authority. Thus, the alleged lack of response to BP-8 and BP-9 forms did not render administrative remedies unavailable to Hill.

Even if the failure to answer a grievance could render remedies unavailable, no reasonable factfinder could find that any non-responses prevented Hill from administratively exhausting his claims. Hill testified as follows concerning how he proceeded in the grievance process if officials did not answer a BP-8 or BP-9:

> [Magistrate Judge Kaull]: All right . . . if the BP 8s and 9s . . . were not responded to, is it your contention and your testimony that that excuses you from having to file a timely BP 10 or 11?
>
> [Hill]: My position –
>
> [Magistrate Judge Kaull]: That's a simple question.
>
> [Hill]: It is really not a simple question, Your Honor, and I think we know that it's not a simple question, is because my position is that when they don't respond to the informal resolution, the process is waived. However – however, I will take the next step of filing that BP 9. Why? Because it's easily accessible, and that's the only reason I do it, because it's an easily accessible form. The BP 9 I can get from someone else. I just can't get someone else to process it, so I'll do the BP 9 as the next step.
>
> [Magistrate Judge Kaull]: What about the 10 and 11?
>
> [Hill]: It depends what the issue is. If the issue is retaliation, then I'm not going to do the 10 and 11. For example, with the Lieutenant Trait situation, I know in my mind – and I wrote a letter to Warden Driver, but I know in my mind that I more than likely did not do the 10 and 11.
>
> [Magistrate Judge Kaull]: What about the CFR book?
>
> [Hill]: The CFR book, and I have it here in front of me, is very clear. They specifically say that you are to assume it was denied at that level. It does not say anything else other than that.

Hr'g Tr. vol. 2 199:23-201:1, Feb. 10, 2012 (emphasis added). This testimony

demonstrates that Hill knew about the grievance process and could easily proceed to the BP-9, BP-10, and BP-11 levels even if Hazelton officials did not answer a BP-8 or BP-9. Indeed, the testimony of Tammy Titchenell (an Administrative Remedy Clerk at Hazelton who worked with the grievance process during the relevant time period) reinforces that a lack of response to a BP-8 form would not have prevented Hill from using the process because she stated officials would accept a BP-9 that did not include a BP-8. See Hr'g Tr. vol. 3 92:12-94:12, Feb. 15, 2012; see also Decl. of Tammy R. Titchenell, Feb. 17, 2012. Hill's testimony and evidence of the remedy process at Hazelton show that Hill did not exhaust his claims if officials did not respond because he believed that the law did not require that he continue the process, not because a non-response prevented him from doing so. Thus, no reasonable factfinder could determine that any failure of officials to answer a BP-8 or BP-9 rendered remedies unavailable to Hill.

Finally, and most critically, no reasonable juror could find that officials ever failed to answer grievances as Hill claims because the conclusion is inescapable that Hill supported this argument with fabricated documents. The documents at issue are six BP-9 forms that Hill contends show officials processed his grievances only after he filed this lawsuit. Pl.'s Ex. 7-12; Hr'g Tr. vol. 1 67:16-76:24, Jan. 20, 2012; Hr'g Tr. vol. 2 163:20-165:17.

Viewing these documents together, it is evident that Hill did not submit these BP-9 forms as he claims. A BP-9 form contains four pages. When a prisoner fills out a BP-9, he writes only on the top page because the other three pages are carbon copies of the first page. The top page of the BP-9 form states: "ORIGINAL: RETURN TO INMATE." See Pl.'s Ex. 1. Hill testified that he submitted these BP-9 forms and Case Manager Rapunzel

Stevens-Clements copied them for him.  Hr'g Tr. vol. 2 163:20-22.  Stevens-Clements testified that she only copied "the front page of the [BP-9] since all others are carbon copies of the original document."  Hr'g Tr. vol. 3 157:3-5.  She explained that there was "no need to separate [the BP-9]" and that one "wouldn't separate it because the whole thing would have to be turned in to the administrative remedy clerk."  Id. 157:5-8.  Hill's exhibits, however, are various pages from a BP-9 form–not just the top page of the form that Stevens-Clements copied and returned to inmates.[4]  In fact, Hill's Exhibit 8 is a page from the BP-9 that an inmate would never have a copy of after filing a BP-9 because this page is placed in the warden's administrative remedy file.

Hill has offered no evidence on which a reasonable juror could rely to reach a different conclusion.  At the hearing, Hill posited that these exhibits were different pages of the BP-9 form because Stevens-Clements was likely separating the BP-9's pages and submitting them for routing before making copies of each BP-9 for Hill.  Hr'g Tr. vol. 2 167:9-18.  He gives another explanation in his reply, arguing that he "possibly . . . kept a page from each grievance he sent out" as regional appeal offices only require a single copy of prior grievances.  Pl.'s Reply at 6.  Not only are these arguments inconsistent, but Stevens-Clements' testimony shows that they are unsupported speculation.  Stevens-Clements testified that she only copied the top page of a BP-9 for an inmate upon its submission and that she submitted all four pages of the BP-9 to the administrative remedy clerk.  Thus, if Hill actually submitted these BP-9 forms and officials did not answer them for months, he should only have a copy of the top page of each BP-9.  That is not,

---

[4]  It is unclear which page of the BP-9 form Hill's Exhibit 10 is from because the bottom of the page is cut off.

however, what he submitted to the Court. Therefore, the only reasonable conclusion to draw is that Hill fabricated these documents to support his argument that officials ignored his grievances. The fact that he introduced these documents for the first time at the evidentiary hearing despite the fact that this case has been pending for years reinforces that he did so. See Hr'g Tr. vol. 2 165:14-17.

Closer examination of these documents confirms that Hill fabricated them because the Defendants have shown that Exhibits 9, 10, and 11 are inconsistent with uncontroverted BOP records.

First, Hill testified that he wrote Exhibit 9 on October 1, 2006 because officials froze his entire inmate account when only some of his funds should have been frozen to prevent him from buying stamps to file grievances.[5] Hr'g Tr. vol. 1 72:22-23. He stated that officials rejected this BP-9 on February 26, 2007 per an entry for remedy number 443709 on the BOP's remedy retrieval list. H'rg Tr. vol. 1 72:17-21; see also Pl.'s Ex. 3. This entry does reflect that officials received and rejected a BP-9 on February 26 concerning a freeze on Hill's account. On October 1, 2006, however, Hill's entire account was not frozen. Hill withdrew $20.00 from his account the day he claims he filed Exhibit 9. Defs.' Ex. 13 at 1. This transaction left his account with a balance of $235.46 with an encumbrance of $197.36 for the property damage.[6] Id. His account did not drop below $200–near the level of the encumbrance–until months later on January 7, 2007. Id. In fact, the entry that Hill

_____

[5] The parties agree that funds in Hill's account were subject to a freeze for property damage at a previous institution.

[6] Hill supplied the statement of a trust fund technician that also states that $197.36 of his account was impounded for property damage.

identified on the retrieval list corresponds with the time period in which his account balance neared the point where he could not withdraw funds due to the encumbrance. Thus, not only does the record establish that Hill testified falsely that officials froze his account to prevent him from accessing administrative remedies, it demonstrates that Hill very likely wrote a BP-9 that led to the entry in the prison's records months after October 1, 2006 when he was actually in danger of not having funds exceeding the encumbrance.

Second, Hill testified that he wrote Exhibit 10 on October 5, 2006. Hr'g Tr. vol.1 73:16-17. He claims in this purported BP-9 that he could not access BP-8 forms because Counselor Marrero was not making rounds in the Special Housing Unit ("SHU"). Hill lists his unit as the SHU on this document. The BOP's inmate locator records, however, state that Hill was not in the SHU on October 5, 2006. Defs.' Ex. 10 at 7. Further, Hill testified that this BP-9 appears on the retrieval list as remedy number 449355-F1 or 449365-F1. Hr'g Tr. vol. 1 73:7-15. The retrieval list states that these remedies were submitted on April 16, 2007 and that one closed on May 22, 2007 while the other was rejected on April 16, 2007. Pl.'s Ex. 3 at 3. Consistent with these submission dates, Hill was in the SHU on April 16, 2007 when the remedies that Hill identified on the retrieval list were submitted. See id. at 6. Thus, it is evident that Hill did not submit Exhibit 10 as he claims because Hill lists the incorrect location of his housing when he purportedly submitted it and, moreover, claims that Exhibit 10 is one of two remedies that were submitted when he was in the SHU.

Third, Hill testified that he wrote Exhibit 11 on October 11, 2006 concerning Paragraph G of his complaint. Hr'g Tr. vol. 1 75:3-12. On Exhibit 11, Hill wrote: "Today I got 2 BP9s back in the mail with a note saying 'no BP8 rejected.' I specifically wrote in the

BP9 I don't have access to the BP8s because my counselor does not come to SHU."

Paragraph G states: "Since I returned from court 3 BP9s have been returned to me, for not

doing BP8s. However I wrote BP8s on these issues, and they are never responded too

[sic]." Compl. at 6. Per the BOP's inmate locator records, it cannot be true that Hill

submitted Exhibit 11 on October 11 upon his return to Hazelton from court. Hill was in

Hazelton consistently from September 12, 2006 (the day he arrived there) through at least

October 10, 2006. Defs.' Ex. 8 at 7. He did not return from court on October 11 as Exhibit

11 purports. Hill actually returned from court much later as BOP records state that he left

Hazelton in mid-October 2006 and returned on November 28, 2006. Id. Hill has introduced

no evidence contradicting these records. Thus, no conclusion can explain these

inconsistencies other than that Hill fabricated Exhibit 11.

Accordingly, viewing these documents together and separately, no reasonable juror

could find that Hill ever submitted Exhibits 7 through 12 as he claims, let alone that officials

did not respond to them, because they cannot be reconciled with uncontroverted BOP

records and evidence concerning how the grievance process works. Rather, a reasonable

juror could only conclude that Hill fabricated Exhibits 7 through 12.

The Defendants ask that the Court dismiss Hill's complaint for fabricating these

documents. "A court may use its inherent power to dismiss a case or vacate a judgment

for fraud on the court." Liva v. Cnty. of Lexington, 972 F.2d 340, 1992 WL 187299, at *1

(4th Cir. Aug. 6, 1992) (per curiam) (citation omitted). Exercising this power is appropriate

"if a party has willfully deceived the court and engaged in conduct utterly inconsistent with

the orderly administration of justice." Id. (citation and quotation marks omitted). Dismissal,

however, is only appropriate "where the defaulting party's misconduct is correspondingly egregious." Id. (citation and quotation marks omitted). When, like here, a prisoner falsified a document to prove he had administratively exhausted his claim in Campos v. Correction Officer Smith, 418 F. Supp. 2d 277 (W.D.N.Y. 2006), the district court found the "knowing presentation of a falsified document" justified dismissal of the case. Id. at 279.

Here, there are strong grounds for dismissing this case because the fabricated documents are a cornerstone of Hill's argument that the grievance procedure was not available to him. The Court, however, declines to sanction Hill by dismissing his complaint because this case is subject to dismissal regardless.

### b. Retaliation

Next, although Hill alleges that officials took retaliatory actions, the record establishes that any such actions did not prevent him from filing grievances. Hill testified about how he approaches the grievance process when he believes retaliation occurs as follows: "If the issue is retaliation, then I'm not going to do the 10 and 11. For example, with the Lieutenant Trait situation, I know in my mind . . . that I more than likely did not do the 10 and 11." Hr'g Tr. vol. 2 200:16-21. This testimony demonstrates that Hill chose to not file grievances even if he could access the forms when he believed that officials' actions constituted retaliation, not due to any acts of officials. More of Hill's testimony reinforces that did not occur here:

> [Defendants' Counsel]: You testified with respect to the first series of events that this was retaliation. This didn't stop you from filing and proceeding through with the remedy process; is that correct?
>
> [Hill]: No, it didn't.

> [Defendants' Counsel]: And you were able to proceed, and you continued to file in the face of what you have characterized as threats and retaliation?

> [Hill]: That's correct.

Id. 111:19-112:2. In fact, Hill stated at the hearing that he filed a BP-8 concerning his allegation that Lieutenant Trait offering "extra trays" to the first inmate to stab him constituted retaliation. Id. 159:17-18. Even assuming Trait made this statement, it cannot be said that this act prevented Hill from exhausting his administrative remedies because Hill used the grievance process concerning that very claim. Therefore, no reasonable factfinder could find that any alleged retaliatory acts of officials prevented Hill from using the grievance procedure because he admitted he could and did file grievances regardless of the alleged retaliation and, further, testified he chose to not file grievances when he believed retaliation was at issue.

Hill acknowledges the alleged retaliation did not deter him from filing grievances as he urges that what matters is whether retaliation would deter "a person of ordinary firmness" from filing grievances, not whether it actually deterred him from doing so. He supports this contention with Hill v. Lappin, 630 F.3d 460 (6th Cir. 2010) and Amador v. Andrews, 655 F.3d 89 (2d Cir. 2011). Setting aside the fact that Second and Sixth Circuit decisions do not bind this Court, these cases are distinguishable.

In Hill, the Sixth Circuit considered whether Hill stated a First Amendment retaliation claim. 630 F.3d at 471-72. This claim required proof that officials "took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage'" in the protected conduct at issue, the right to file grievances. Id. at 472 (citation omitted). It was irrelevant whether the action actually deterred Hill from filing grievances. Id. In contrast,

Hill now raises retaliation to avoid dismissal for failure to exhaust administrative remedies.[7] This analysis differs from that applicable to First Amendment retaliation claims. Thus, the Sixth Circuit case does not control here.

Amador also does not mandate an objective assessment of Hill's retaliation argument. In that case, the Second Circuit explained that estoppel is a defense to failure to exhaust administrative remedies when a prisoner can show officials "took affirmative action to prevent him from availing himself of grievance procedures." Amador, 655 F.3d at 103 (citation and quotation marks omitted). The court then noted that prior Second Circuit decisions "held that verbal and physical threats of retaliation" and other acts constitute such action. Id. Amador provides that a prisoner can invoke estoppel based on retaliation only if the retaliatory actions prevented the inmate from using the grievance process. Id. This is not an objective analysis. Accordingly, Amador does not support the proposition for which Hill offers it.

In sum, no reasonable factfinder could conclude that retaliation rendered the grievance process unavailable to Hill because Hill's own testimony establishes that the alleged retaliatory acts did not prevent him from administratively exhausting his claims.

### c. Access to Grievance Forms

Finally, the record establishes that Hill had access to grievance forms such that remedies were available to him. Hill has contended that he could not file grievances

---

[7] Indeed, the Fourth Circuit remanded this case solely for the Court to make that determination. Even so, the Fourth Circuit has not issued a published decision concerning whether prisoners have a First Amendment right to file grievances. Plummer v. Riley, Civil Action No. 2:12-CV-3412-TLW-BHH, 2014 WL 1277903, at *11 (D.S.C. Feb. 26, 2014).

because Counselor Marrero did not give him BP-8 and BP-9 forms. The testimony at the hearing, however, established just the opposite. Hill testified that Marrero gave him BP-8 forms. Hr'g Tr. vol. 2 117:12-18. Indeed, Marrero testified that he made rounds and never refused to give Hill a form. Id. 244:14-18, 245:12-14. Other evidence showed that Hill could access grievance forms while in the SHU. Pamela Garcia testified that she was a SHU counselor at Hazelton when Hill was incarcerated there and that she made daily rounds in the SHU. She gave inmates BP-8 and BP-9 forms and took such forms from inmates during those rounds. Hr'g Tr. vol. 3 163:22-164:12, 165:1-166:18. Further, other counselors testified that they provided inmates who were not assigned to their units with BP-8 and BP-9 forms, which would include Hill. Id. 129:1-5, 157:17-158:13. Hill's testimony shows that these counselors were credible as he testified he could easily obtain BP-9 forms. Hr'g Tr. vol. 2 199:23-201:1. Therefore, no reasonable factfinder could conclude that Hill lacked access to grievance forms in light of this evidence–particularly Hill's own testimony.

In conclusion, the Court finds that the grievance procedure was available to Hill within the meaning of § 1997e(a) so he could administratively exhaust his claims because no reasonable factfinder could find otherwise. Specifically, no reasonable juror could conclude that Hill filed grievances that officials did not answer, that retaliatory acts of officials prevented Hill from using the grievance process, that Hill did not have access to grievance forms to use the process, or that anything else prevented Hill from using the grievance procedure. Accordingly, the Court **OVERRULES** Hill's objections. Because Hill has not disputed that he failed to exhaust his claims, see Hill, 380 F. App'x at 270,

dismissal of his complaint is appropriate.

## IV. Conclusion

Upon careful review of the record, the Court **OVERRULES** Hill's Amended Objections. It is the opinion of this Court that the magistrate judge's Report and Recommendation should be, and is, hereby **ORDERED ADOPTED** for the reasons more fully stated therein. Accordingly, the Court **GRANTS** the Defendants' Motion to Dismiss or for Summary Judgment and hereby **DISMISSES** this case **WITHOUT PREJUDICE**.

The Court **DENIES AS MOOT** Hill's Motion for an Extension of Time.

The Court **ORDERS** that the Clerk **STRIKE** Hill's surreply from the record.

The Court **DIRECTS** the Clerk to enter judgment in favor of the Defendants.

The Court further **DIRECTS** the Clerk to close this case and strike it from this Court's active docket.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record and/or *pro se* parties.

**DATED:** August 22, 2014

GINA M. GROH
UNITED STATES DISTRICT JUDGE